This audio file for case 10-10131 USA v. Damien Zepeda is incomplete. It is missing the first six minutes of the appellant's argument. This file will be updated with complete audio when it is recovered. If you have questions about this issue, please call the clerk's office at 415-355-8000. This audio file for case 10-10131 USA v. Damien Zepeda is incomplete. It is missing the first six minutes of the argument. If you have questions about this issue, please call the clerk's office at 415-355-8000. If you have questions There's a listing of recognized tribes, and both those tribes are listed, are they not? Your Honor, the Pima and Tohono O'odham, Pima was insufficient. Tohono O'odham, without saying a nation of Arizona, was insufficient to establish the blood requirement. If I look at the BIA list, I won't find Tohono O'odham on the BIA list? No, no. Tohono O'odham is a sub-Tohono O'odham of Arizona is located on the BIA list, which is very specific. But what evidence did the defense introduce at trial to show that there was some other Tohono O'odham nation that is not on the recognized list? There was no evidence introduced. Isn't that the government's burden of proof? It is the government's. Beyond a reasonable doubt. Yes, it's the government's burden. Did you acknowledge it or did you stipulate to it? Because I read it, I read this exhibit that you stipulated as fact. So then the only question becomes, is there a listed tribe, which it seems to me the district court can determine as a matter of law? Well, first, the government didn't ask the district court to determine it. They never offered any evidence whatsoever of the requirement of federal recognition. And there was nothing in the record from which a reasonable jury could even infer the requisite element of federal recognition. Now, as I understand it, Tohono O'odham is a broad category, roughly like, oh, perhaps Cherokee. And there are lots of Tohono O'odham who are members of federally registered tribes, including the Tohono O'odham tribe of Arizona, and including several other federally recognized tribes in Arizona, and including lots of people who are Tohono O'odham who are not members of any tribe. And it seems to me the government had to do more than simply say Tohono O'odham. That's essentially the argument, because Tohono O'odham literally means desert people. So there is a subset of Tohono O'odham. As a practical matter, the truth be known, your client is an Indian under the statute, right? My client, the government did not prove my client. No, but as a practical matter, he is. So we're not talking, you're not alleging factual innocence of that. You're dealing with sufficiency of the evidence. Mr. Zepeda may very well not be, as we argued. Well, but if they meet a threshold, then if that's sufficient, then you had the opportunity to say that he wasn't, he was a different Tohono, that he was in some other area and didn't, correct? Well, that was a threshold jurisdictional issue, which may be sufficient to survive our trial. Why can't the jury infer from the fact that we've got the stipulation here that he is Tohono O'odham and the fact that he lives in Arizona, that why is there not sufficient evidence for the jurors to infer that he is in fact Tohono O'odham of Arizona? There are many people that live in Arizona that may or may not have Indian ancestry. And there are lots of people who are charged with crimes who turn out to be innocent or turn out to have not been sufficient evidence. That's why we have juries. You know, we put the evidence before the jury. If it were undisputed, he'd plead guilty of it. But that's why we have juries. And they say, well, there's uncertainty. There's always uncertainty about the past. That's why we have trials. There was absolutely no basis in the record for the jury to have inferred that. Sure. It says right here, we stipulate these facts to be true. This is what's in the content. And so he, it's absolutely stipulated that he is Tohono O'odham. It's also he lives in Arizona. Why can't they say that he's not just any old Tohono O'odham? He's a Tohono O'odham from Arizona. But the requirement, at least on the first prong, is that the blood of his ancestor be of a federally recognized tribe. That's a threshold matter in accordance with this Court's definition. No, no, I understand. But the Tohono O'odham of Arizona are a federally recognized tribe. The Tohono O'odham of Arizona are. So my question is, why can't they infer from the fact that he is living in Arizona and he is a Tohono O'odham that he is the Tohono O'odham of Arizona, of that tribe, not just Tohono O'odham of Mexico or someplace else? That goes too far, Your Honor. That presumes an element. I've seen people convicted on less. That presumes an element rather than establishing, especially where there was nothing else. So I guess your position would be that the sufficiency of evidence provides that the prosecutor has to not only show that Tohono O'odham of Arizona is a recognized tribe, and I think it's rather testified as to his Indian, you have the certificate, they also have to rebut that he could not, that he was not Tohono O'odham of Mexico. They didn't have to rebut. There was just simply. Well, if they didn't have to rebut it, then why wasn't it enough? I mean, I'm proffering that it would have been your job, if he was a Tohono O'odham of some of Mexico which wasn't federally recognized, that would have been your responsibility after the threshold was met. Well, for some reason, the trial counsel did not decide to pursue that aspect. Maybe because he was an Indian under the statute. The record actually before the court showed that he lived off the reservation. There were no demonstrably political or social ties to any reservation. There was nothing that suggested he received any benefits reserved only for Indians. Which points to a question I'd like to take a minute or two to address, and that is do we need this complication? Shouldn't we just overrule that part of Bruce and Nagai? There's nothing in the statute that says it has to be a federally recognized tribe. That's just a construct we've created. Well, didn't we create it? Didn't we take it from the antelope case in the United States Supreme Court? Yes, Your Honor. Antelope, too, you must define Indian or first ancestral blood within certain parameters, and we have the Rogers test in 1846 that required some Indian blood, and then we have antelope. I thought the Rogers test said that a white man of mature age couldn't abjure U.S. citizenship by claiming to be adopted. So that seems to be very distinguishable. That was the only case I saw that suggested blood was a requirement. And later Supreme Court cases indicate a lot of concern about reviewing the 1153 through bloodlines and racial division and raised equal protection concerns. So I'm a little concerned about taking that racial approach. Why shouldn't we move away from that blood quantum, which is so foreign to how we consider people and divisions of people today? The blood quantum is necessary because originally this legislation arose out of and the ability to regulate Indians, meaning Indians or natives indigenous to America prior to the arrival of Europeans. It does not mean Native Americans in the sense that we may have South Americans, North Americans, and Canadians. Why wouldn't tribal enrollment be enough, which actually is suggested in antelope and in some of our cases as well, that tribal enrollment would be sufficient because that shows recognition of a political unit, which is what the Supreme Court said is acceptable as opposed to definitions based on race. And here he was tribally enrolled, and you don't dispute that that was tribal enrollment by a federally recognized tribe, I understand. That's correct. On its face, the Gila River Indian community is federally recognized. But back to the ancestral blood prong, these statutes were never meant to apply more broadly. This entire area, 1153, is designed as a narrow intrusion into a sovereign state or sovereign nation's jurisdiction. So it must be limited. There must be a confining test. Now, 200 years ago, it would be very easy to determine what an Indian was or what Indian blood was. But with immigration and intermarriage and cross-border crossings, many, many people have so many. So if you make it so complicated, then no one can decide whether you try someone under this statute or whether you try them under, you know, otherwise in court. Because, I mean, clearly this is punishable. And then if you make it so complicated, and then I think if you add volitional, and if you change these tests to a certain point, we'll never know who's who. And then, I mean, then essentially you get off of a crime because we can't, you know, we can't determine your bloodline. Well, the government needs to do its homework before bringing its significant resources to there. And there are other jurisdictions that could prosecute. The States under Public Law 280 at the very least have jurisdiction to prosecute. Kennedy. You have to finish. I asked you a question about overruling MAGAI. And I gather, before you have the chance to answer, just Kristen projected, which is fine. I think you adopted her answer. I just want to understand what your answer is. And I think the answer was we're precluded by antelope from overruling MAGAI. Again, I don't want to put words in your mouth, but I think that was the gist of the interaction. And if that is, in fact, your position, if it's not, tell me. If it is your position, tell me what an antelope requires that this be a federally recognized tribe. There – I'm not sure if it's specifically an antelope, but there's reference back to – Okay. Again, I don't want to put words in your mouth. My question was should we overrule MAGAI. And, again, these things are a little fluid sometimes. I just want to make sure I understand your answer. Are we precluded by antelope or any other case from overruling MAGAI and that aspect of Bruce that requires a federally recognized tribe? And if so, what is it? If you want to think about it and give us your answer in rebuttal, that's fine. But I would like to know what it is that you think precludes us from following what other circuits have done and saying you don't need to be a federally recognized tribe. It's enough for you to be an Indian. Yes, Your Honor. I would like to consolidate my thoughts on that in rebuttal. Okay. I know it's going to be hard to do and also listen to the government, but there it is. So you are out of time. We will certainly give you time for rebuttal. And perhaps Counsel for Amici may address that as well. And I will cede my time to Counsel for Amici. Okay. You are not, you don't have any time left at this point. Did you? She started with 20 minutes. Yes, I started with 20 minutes, so Counsel for Amici could. Was it only? Yes, Your Honor. It's only 20 minutes. And I always put the full amount of time on the clock. So, okay, so how much time do we have now? Okay, so you've got nine minutes to do with as you please. Thank you, Your Honor. So you're going to reserve the time to answer that question afterwards, right? You remember my question. If it's not answered by Counsel. Oh, if it's not answered by Counsel, absolutely. Thank you, Your Honor. My name is Paul Hughes. I'm Counsel for the amici in this case. And if any time remains, too, I'd like to reserve some for rebuttal with the Court's permission. But we'll see as we have time. To answer just directly to the Court's question as to whether or not the Court should reconsider the MAGAI decision and whether or not there is a requirement for federal recognition with respect to the first prom, the blood requirement, our answer is a fewfold, that no, the Court should not overrule that test. But we could overrule it and be consistent with the other circuits, correct? Well, a few points on that, Your Honor. No other circuit has, in fact, rejected that test. The government suggests that there's – Why don't you focus first on the specific question? Is there anything in controlling law – Yes, Your Honor. – which would mean Supreme Court law that precludes us from doing it? You can then speak to the question of whether it's wise to do it or – Absolutely right. – or whatever. But is there anything in Antelope or any other case, Supreme Court case, that precludes us from saying that part of MAGAI and Bruce that said there has to be a federal recognized tribe, we're overruling that? Yes, Your Honor. I think it's controlled both by Morton v. Mancari and Antelope. As those cases – I have both cases. So do you have a page, a passage you want to point me to? Which one do you want to start with? Yes, Your Honor. We can start with Antelope. Okay. Okay. And this is where, again, the Court is referencing the same principle from Morton v. Mancari where the Court says Respondents were not subjected to federal criminal jurisdiction because they're of the Indian race, but because they're enrolled members of the Coeur d'Alene tribe. And I think the – So that's not what – that's being an enrolled member of a tribe. So a tribal certificate would be sufficient is what they're saying. Well, Your Honor, I think what we have to deal with and what I think MAGAI correctly did was it reconciled both Rogers, which every court that's considered still believes that Rogers is controlling, with the later decisions of Morton v. Mancari and Antelope. Because those later decisions certainly put the emphasis on the political tie, on the political connection. But the way I think to understand the Rogers test, which, again, every court – Morton v. Mancari was a question of a federal benefit, right? Yes, Your Honor. So that's quite different from jurisdictional – whether we have jurisdiction for federal criminal law purposes. Your Honor, there is some distinction, but I think Antelope extends the reasoning of Morton v. Mancari. I'm sorry. I was looking at the page that you cited, but I didn't find the passage. Can you tell me where you read it from? Yes, Your Honor. The part that I was citing was a paragraph that begins, both Mancari and Fisher involved preferences. I see it. And then towards the end of that paragraph, Your Honor, where the court cites Morton v. Mancari, and then it explains why the – Are there such regulations rooted in the unique status of Indians as a separate people with their own political institutions? Okay? I didn't see anything there about federal recognized tribe. Well, Your Honor, I think what the court – Let me go to the next sentence. Tell me where I'm missing it. The federal regulation of Indian tribes, therefore, is governed by governance of one's sovereign political communities. It is not to be viewed as a legislation of a racial group consisting of Indians, citing Morton. So what is there in that passage that says we can't say when the federal criminal law says requires Indian status that it has to be enrolled in a relationship to a federally recognized tribe? Well, Your Honor, I think our argument builds on a combination of Rogers with this reasoning from Antelope. And I think that the two-step approach is that Rogers tells us that there needs to be an ancestral tie to a formerly sovereign people, but Antelope explains that the nature of that tie is not a racial one but is, in fact, a political one. And viewed in that way, that explains why Maguy was correct in saying that the federal recognized – Is the implicit premise or argument is that Indians who are not federally recognized are not descendants of a formerly sovereign people? Is that – we know that is, in fact, not true. We know that, as a matter of fact, there are lots of Indians out there who derive – who derive from tribes that are not federally recognized, and tribes that are not federally recognized for all sorts of reasons having nothing to do with the fact that they are, in fact, Indians. Well, Your Honor, I think that is true, and I think that supports why Maguy is correct for a few reasons. First, it demonstrates why this interpretation of Maguy of the first prom makes the statute, in fact, administrable because it defines what kind of ancestral tie is relevant for purposes of 1153 and what sorts not. But also, as Your Honor pointed out, some Indians who might have that racial categorization do not have the historic tie with the federal government. Of course, to be a federally recognized tribe, one of the key requirements – But this talks about being a descendant of a formerly sovereign people, and we know for a fact that there are lots of Indians, lots of blood Indians, people who are descendant of – who are descendant of tribes that once existed, that were once sovereign people, that happen not to be affiliated with a federally recognized tribe. I mean, the two concepts are quite different. Yes, Your Honor. I think that's why the emphasis in the wisdom of Maguy is deferring to the United States' recognition of which tribes have, in fact, been federally recognized because that is the best understanding of which tribes were a formerly sovereign people because that's one of the key requirements of federal recognition. As I look at both Bruce and Maguy, it seems to me that the two-prong test is designed to make sure that someone is both an Indian by blood and tied to a tribe either by enrollment or by some fairly close affiliation. The two prongs necessary according to the reasoning of the cases so that a white person who has become a member of a tribe according to the tribe's rules not be treated as an Indian for this purpose. I got that. But why isn't it appropriate to modify the test to allow someone to be characterized as an Indian whereas here it is unquestioned that he is of half Indian blood and that he isn't enrolled in a tribe? So we're not faced with the problem of a white person enrolled in a tribe. It's clear that he's half Indian by blood and he's enrolled in a federally recognized tribe. Why is that not sufficient? Well, Your Honor, I think there are two reasons. First, by just saying Indian as a general racial category, it makes it a very unadministrable test. Well, I understand that. But he is not only Indian as a racial category. He is also an enrolled member of a federally recognized tribe, the Gila community. Well, Your Honor, I think, again, this is where our argument turns on Morton v. Mankari as well as Antelope, where having the strict racial requirement could run into equal protection problems if that becomes an element or an aspect of the offense, whereas Morton v. Mankari and Antelope explain that the test is best viewed as one that is about the individual's political relationship, both current political affiliation as well as historic ancestral political affiliation. Well, you also want to make it, my understanding of your brief is that you also want to make it a requirement that the individual has made a volitional decision to affiliate with a tribe. You want to add that. And then you also argue that the Indian status is an element of the offense and the government must allege it in the indictment and prove it to a jury. Your Honor, I would like to reserve a little bit of time for my colleague before time expires. But, yes, Your Honor, I do think he's Well, you just need to answer the questions and then the time goes where it goes. Yes, Your Honor. My apologies. We do, in our brief, explain why having a current political affiliation with a tribe does require, in some circumstances, or it does require consent of the individual. Now, to be sure, enrollment in a tribe I think will often be very strong evidence of that kind of consent. But as we explained, the tribal membership is a two-way street. It is recognition by the tribe of somebody who is either a member or eligible for membership, and then it's acceptance by the individual of being a member in that tribe. And being an Indian requires those elements. Again, enrollment will generally So could they then, they were enrolled in all of that, but then at the time of trial, then they just say, I don't want to be associated anymore, so, you know, gotcha. You're in the wrong court. No, absolutely not, Your Honor. That, I think, would be Well, why couldn't they do that? If volitional means, volitional can change. Well, Your Honor, I think if a defendant If that's what a requirement is, then they'd have to be volitional as at the time that they were tried. Well, Your Honor, I think volitional is just showing that the individual, in some capacity, has demonstrated that they have an intent or desire to be affiliated with the Indian tribe. They can change, you know. Well, Your Honor People get divorced, you know. And, Your Honor, if If a defendant were to make that argument, I think that would be a question for the jury. I think it would generally be a very weak question for the jury. I think it's not one that a defendant would generally choose to pursue. Why is this a question for the jury, this side of But if it's a jurisdictional issue on one hand, and then it's a question But then you make it a question for a jury, then so, essentially, how would the government ever know where to try someone? They can change it on the day of trial. Well, Your Honor And then, you know, gotcha. I'm not guilty because you can't prove that I want to be a member of that tribe today. Your Honor, I think, though, you could And then double jeopardy attaches. Well, Your Honor, I think you can envision circumstances where somebody is an enrolled member of the tribe, but, for example, they were enrolled by their parents immediately after birth, never had any affiliation with the tribe from then on, might not know that they've been enrolled. In a circumstance like that, you could conclude that even though their parents enrolled them at two weeks of age, they never had the volitional aspect to be an Indian. I think that is the sort of circumstance in which we You see why you're, why you're, why that, why crafting it that way would not have an appeal to a court that, where you have a double jeopardy gotcha? Well, Your Honor, I think in many I mean, we don't want, we want people to have due process. We want them, if it is an element of a crime, we want it to be, you know, we want it to be clear. But if you make it, you know, that it can change on any given day, then how's anyone ever to know whether you have jurisdiction? Well, and, you know, in practice, Your Honor, if somebody tried that maneuver as well, if somebody were not an Indian, I think in those circumstances you would generally have state jurisdiction. I realize we're over time, but this seems to be a very easy question. The question of volition, if volition is an aspect of it, should be determined as of the time of the commission of the crime, not at the time of being tried. So that the question is, at the time the crime was committed, or the alleged crime was committed, were you a volitional member? The fact that you might later renounce, tough luck, you couldn't. I mean, that seems to me a very straightforward answer. Yes, Your Honor, I agree with that. Is it? If it's jurisdictional, and if we have jurisdiction over certain persons and not others, then it seems to me when your status changes, jurisdiction changes. So it's not such an easy question. But I think you're out of time. Thank you, Your Honor. I want to hear from the government. May it please the Court. I'm Bob Niskell from the U.S. Attorney's Office in Tucson on behalf of the United States. In this case, the government proved that the defendant was an Indian by the stipulated admission of the tribal enrollment certificate from the Gila River Indian Community, a federally recognized tribe which established the defendant's Indian blood. Clarify one thing for me, just so that relative to the timing of this, Magi, is that how we pronounce it, had not been decided at the time of this. That is correct. And the model jury instruction that we're talking about didn't exist, correct? That's correct, yes. So the world at that time was. Lapeer had been decided, though, hadn't it? Excuse me? Lapeer v. McCormick. Yes, it had been, Your Honor. And we, in Lapeer's, we made it pretty clear that federal recognition was necessary, correct? As I read Lapeer, Your Honor, that seemed to be going to the second aspect of the test of an Indian. As in. But Lapeer makes it pretty clear that there has to be federal recognition. Excuse me. Yes, Your Honor, but again, if you read, as I'm reading Lapeer, it's focusing on the tribal and federal recognition as an Indian prong of the test. In other words, in that case, they're not talking about a racial one in Lapeer. And in fact, they specifically say in dealing with Indians, what federal government is dealing primarily, not with a particular race such, but with members of certain sociopolitical groups. Again, that's the second part of the test of who's an Indian. So it was MAGAI that added that requirement that the blood aspect of the test be from a federally recognized tribe. Well, the jury instruction that you gave, though, just simply said that was given to the jury or simply said the government had to prove he was an Indian. What does that mean? That means, again, the jury instructions were stipulated to basically by both sides. They were. Well, I mean, what does it mean, though? What was it, what did the jury have to, How was the jury to decide that he was an Indian? By looking at him in the courtroom? No, the jury had the certificate of tribal enrollment. The jury had testimony from his brother who testified that they both had the same signs, that the brother was Native American, and that his blood ancestry was from the Pima. What? From the Pima. I was just. There's something wrong with the sound system. Also, if you could maybe just slow down a little bit.  Are you able to hear me, Judge Ferguson? No, but throughout these proceedings, there's a kind of a wobbling going on. You know, the words become at a very slow pace. So it's not clear. I don't know if the technician is there or not. Yeah, I have a cell phone. Well, that's all right. Go ahead. I'll figure it out. Go ahead. Counsel, I think you were speaking a little bit quickly, and I had a hard time understanding your last answer to the question about, I think it was a question asked by Judge Pais about LaPierre and whether it didn't require a connection to a federally recognized tribe. Could you just repeat that? What I was saying is in reading LaPierre, LaPierre is focusing on the second aspect of the test, the Rogers test for who is an Indian. In other words, the Rogers test is some Indian blood and federal or tribal recognition is an Indian. LaPierre is talking about the political affiliation, which is the second part of the Rogers test. It doesn't, as I read it, it doesn't specifically talk about Indian blood. That first became explicit in MAGAI, which was decided after this case was tried. When you say it became explicit, are you talking about the reference to the federally recognized status of the tribe being an overlay as to both prongs? Is that what you mean? Right, where they specifically say there's an important overlay that the blood has to be from a federally recognized tribe. That's the part that MAGAI added in the government's opinion. Mr. Miskell, I have a question for you. If this were a bank robbery case, you would have to prove to a jury that the bank was federally insured, right? Correct. That's a question of fact that you have to prove to the jury. As I understand it, it's your position that whether a tribe is federally recognized or not is a question of law. Is that right? That is correct. Why the distinction? Because whether a tribe is federally recognized is basically premised on statutory law and treaties. It's not something, for example, Chase Bank isn't federally insured because there's a statute saying Chase Bank is federally insured. Chase Bank isn't federally insured because the government has a treaty with Chase Bank. Counsel, if that's the case, then why didn't you just put in the evidence or give to the judge the BIA listing and put in some evidence that says the Tohono Tribe that he's a member of is this tribe? So, I mean, if that's the case, because here it clearly talks about federally recognized, and we have a list and the judge can look at that. And then what you would have, I think, needed to do maybe is, and I don't see why this is so burdensome for the government, to put in some evidence that the Tohono O'odham Tribe that he has one quarter blood from is the same one that's the Arizona Tribe that's listed. Specifically in this case, the government didn't introduce any evidence about the Tohono O'odham Tribe because Maggie hadn't been decided then. And as a practical matter, in this case, the government was premising the proof of Indian status on the tribal enrollment, which was stipulated to the question of whether he was Indian or not was never argued in the case. We had a tribal enrollment that was stipulated to. We had testimony that his brother, who had the same parents, was a Native American from Pima. And it comes out in the transcript. It's T-O. I would suggest that's the abbreviation T-O for Tohono O'odham. But that was sufficient in light of what was at issue in the case, basically. So is that your answer to Judge Silberman's question? This certificate of enrollment is the certificate of insurance in his bank robbery hypothetical? Well, what I'm saying is I would say whether somebody is an enrolled tribe, the better analogy instead of a federally insured bank would be to whether something is a controlled substance under the drug laws. In other words, there's no dispute marijuana is a controlled substance because there are regulations that say that. Well, there are two questions. One of them is, what is a federally insured bank? And that's a question of law. And the second question is, is this bank, in fact, federally insured? And that's a question of fact. That is correct. It's the same here, right? One of them, what is an Indian sufficient purpose for purpose of statute? That's a question of law. Whether he factually meets that requirement, that's a question of fact. And for that thing, you rely on a certificate. Right. I'm not sure I'm understanding your question, Judge. The government's position is whether a tribe is federally recognized doesn't change from case to case. So that is a question that the court should be taking notice of as a law. But you still have a factual question in every case whether, in light of whatever the legal definition is, whether this particular individual has a sufficient connection to the definition for a jury to find that he is in fact an Indian. Yes. The jury has to find that he's an Indian. It's not the jury's role to find out whether a tribe is federally recognized. So, counsel, you, as I understand, you conceded that the jury instruction that Judge Silver actually gave was an error on that point because she just said you have to find that the offense occurred within the confines of the action in the Indian community in the District of Arizona, and the defendant is an Indian. You concede that was erroneous? The jury should have been instructed with the Rogers test. It should have been instructed something as to what is the definition of an Indian, right? Correct. So what do we do with that? Well, I think in this case, again, since they were joint jury instructions, you're looking at plain error. In this case ---- Actually, it's called invited error. Okay. Thank you, Judge. It could be, but it might not be. Well, isn't that your position? It's invited error. Yes, because they were stiffed. The way Judge Silver does it in the district court, the parties submit joint proposed instructions, and the instructions that covered the theory were ones that were agreed to, and actually, as I understand it, they were consistent with the Ninth Circuit model instructions at the time, actually. So Maggie wasn't decided at the time, and therefore, the government shouldn't be blamed for not having a proper jury instruction. But on the other hand, the defendant should be cited for invited error because Maggie wasn't decided. He didn't have the foresight. Is that right? Is that your position? My position is that basically, as sometimes happens in a court where something is not really an issue, which I think everybody that reads the transcript would agree that this wasn't an issue in this case, that that's the instruction was sufficient considering the evidence and what was being challenged. But it should have said, I admit it should have said that to be an Indian, you have to have some quantum of Indian blood and federal or tribal recognition as an Indian. And this was the evidence of that was overwhelming in this case with that certificate of tribal enrollment that demonstrates Indian blood. Let me ask you. The answer to Judge Paz is yes. That's the way it works. Sometimes defendants, sometimes you have to raise an objection. Isn't it yes? Yes. I mean, that's the way it works. Sometimes you have to raise an objection when the law is unclear to preserve the point for appeal. And even though the law doesn't, even you're not aware of the cases coming down the road. Well, they did raise, they did, he did move for a judgment of acquittal under rule. Yes, he did. But the specific issue was never raised. Well, you don't have to. You don't have to. You just move for judgment of acquittal. It happens all the time, and they preserve all their issues. And it was never, again, he agreed with the jury instructions that just said that the jury had the time. That doesn't make it an invited error. It makes a plain error in my view. Let me ask you a somewhat different question. Assuming for the moment that MAGAI is good law, there are two prongs. And as I read the first prong of MAGAI, it requires that the government show that the defendant is related by blood to an ancestor who was a member of a federally recognized tribe. Am I reading that first prong correctly? Assuming MAGAI is good law, yes. Does that mean that you had to prove that the defendant's father was the member of a federally recognized tribe? I think under that test we would have to prove one of his ancestors was. And proving his father was would have been sufficient. And there's no proof as to anybody other than his father. So we're really talking about the father. Right. So what is it in this record that proves that his father was a member of a federally recognized tribe? Not that he was, but that his father was. Well, again, excuse me, not a member, that his blood is from a federally recognized tribe on the first prong. But you've just wandered away from what I think we just understood is what MAGAI requires. MAGAI requires a showing that an ancestor be a member of a federally recognized tribe. Correct? I believe the first prong of MAGAI says it's got to be blood. The ancestor has blood from a federally recognized tribe. Right. There you go. So we're saying the same thing? I think we are. So I think that means that you have to show that some ancestor, and the father would qualify, was a member of a federally recognized tribe. I wouldn't say that necessarily follows. He could have blood from a federally recognized tribe without being, like, enrolled in the tribe, for example. But that's prong two. This question goes to prong one. Okay. I'm on prong one. It says one-quarter T.O., a blood degree of one-quarter T.O. So blood degree, what does that mean? That means the quantum of blood. So how would he get the blood? From his parents. Oh, okay. So the tribal enrollment certificate says he has some blood from a parent that's Tohono O'odham. Right. And we have testimony from the brother that the father was one-half T.O., and I think we can legitimately infer, as you do, that when the brother says T.O., he means Tohono O'odham. So I think you're so far so good. Okay. But my question is, how have you proven that the father was not only T.O. or Tohono O'odham by blood, but also a member of a federally recognized tribe? I think what we would have to prove is that Tohono O'odham was a federally recognized tribe. In this case. But my understanding is that there are at least four separate federally recognized tribes in Arizona that have people who are Tohono O'odham because they were split up, because they were a broadly recognized category of Indian, and that there are a fair number of Tohono O'odhams in Arizona who are not members of any federally recognized tribe. So how do we know from what you've put into the record that the father was a member of a federally recognized tribe? I'm willing to say that you've proved that the father was Tohono O'odham. I got that. So how do we know that he was a member of a federally recognized tribe? Whether the Tohono O'odham of Arizona, whether the Gila community, because they've got lots of Tohono O'odham in there, or some other federally recognized tribe. How do we get to that point? I think the way you get to that point in this case is under the facts of this case. And let's assume that MAGAI had been in existence, and let's assume the jury had been properly instructed. They would have been instructed that they had to find a bloodline from a federally recognized tribe. The judge would have said the Tohono O'odham nation of Arizona is a federally recognized tribe. From the facts of this case, in the absence of anything to the contrary, the only logical inference the jury could draw is that he's a member of a federally recognized tribe. But you say, I don't think that's the only logical inference. It may be fairly likely. But then I come back to these darn federally insured bank cases. You know, we're very strict about proof of federal insurance. So you get a federal bank robbery charge, and the government has to prove that the bank was insured at the time of the robbery. And every now and again I get one of these cases, and they surprise me when I saw the first one, where the government introduces a certificate of insurance that doesn't cover the precise period during which the robbery took place. And we toss those things, even though it strikes me as preposterous, meaning the bank is in business.  It might have been federally insured the week after, but we require that the certificate show very precisely that it was. We don't allow the inference, in other words. So why do we do the inference here when this is something that probably is fairly easily provable? Again, the difficulty we're dealing with in this case is we're trying to look backwards at a law, a definition that's changed, basically. And that's the rub we're in. But isn't the question under Jackson v. Virginia whether a reasonable jury- Well, excuse me, may I ask you a question? Sure. I wanted to ask you a question. Now, it was the government's burden to prove that he was a member of a federally recognized tribe, right? That was your burden. Right. Now, it just seems to me that the government accepted this stipulation, whatever it says, but never pinned that issue down. In other words, the government was asleep as far as this issue was concerned. Do you agree with that? I would not use the word asleep. I would say- Well, doze it. I would say the government was focused on what was the issue in the case. There was a stipulation that there was a certificate of- The government has got to focus on its burden of proof. It's got the burden of proof here. The government has to focus on it. And the government's position is to give it- You're just trying to get us to pull you out of a hole that you fell into. No, the government's position is that the certificate of tribal enrollment, which demonstrates that the defendant had Indian blood, was sufficient to meet the test of who's an Indian, which is, at least before Maggie, was some quantum of Indian blood and tribal or federal recognition as an Indian. And the certificate of tribal enrollment meets both of those, satisfies both prongs of that definition. That's the government's position. All right. Walk me through that. How does it satisfy both prongs? Because- Okay. That alone, the certificate alone. I mean, I think it's a little closer if you get into some of the other evidence. But you just said the certificate alone. So tell me how. The certificate shows that the defendant is an enrolled member of the Gila River Indian community. There is no dispute in this case that the Gila River Indian community is a federally recognized tribe. The defendant is a member of a federally recognized tribe. But in order to have proof of that, do we have to find that that is a matter of law? Is that inherent to your succeeding on the evidence being sufficient? You could use that or a legislative fact that the court can take judicial notice of. I mean, it's in the Federal Register who the federally recognized tribes are. There's a statute that says courts are supposed to take judicial notice of the Federal Register. So the government's position is that with that, it is sufficient. The evidence is sufficient in this case. Can you go back to answering my question, please? Okay. So you're walking me through. We've got the Gila tribe down. Okay. So that's the second prong of the test. Okay. So then the first prong is some Indian blood. The certificate of tribal enrollment shows he's one-quarter Pima, has one-quarter Pima blood, and one-quarter Tohono O'odham blood. There was no disputed trial that those were Indians. Again, the Tohono O'odham Nation of Arizona is a federally recognized tribe. From all those facts, that is sufficient to prove he's an Indian. But that wasn't before all those facts were not before the jury, right? The only thing that wasn't before the jury was the instruction from the court of which tribes were federally recognized. Well, and so I mean that's There was no evidence before the jury that the Tohono O'odham on the certificate was the Tohono O'odham Nation of Arizona. There was Nobody from the Gila River Indian Community Tribal Enrollment Office got up on the stand or somebody else like that to testify what that was referring to. That's correct. Right? Isn't that the problem? And same for Pima. Counsel, isn't that the problem on prong one? You said the certificate is good enough. And when you answered George Wardlaw's question, but on prong one, doesn't it require the jury to engage in speculation that T.O. means T.O. of Arizona? Isn't that the problem? I don't, again, it's what a rational jury could conclude. In this case, with those facts, a rational jury could conclude that the defendant's blood was I'm just trying to narrow the question and make sure that I'm understanding it. I get that we're going to construe all the evidence in the light and most favorable to the prosecution. I'm willing to give you all of that, of course. But I'm just trying to narrow, isn't that the gap you've got? And the question is whether or not that's going to be a reasonable inference versus improper speculation by the jury? You know, a hole in your case, isn't that it? Well, I would say that on the state of the record in this case, where there was no evidence presented to the jury that there is any other Tona Autumn Nation anywhere in existence, it's the only logical inference they could draw. Could I ask about the Gila River Indian community, the second element? The BIA list says the Gila River Indian community of the Gila River Indian Reservation, Arizona. And I don't think all that language appeared on the tribal enrollment certificate. Does that raise the same issue? But that's one that's not being pursued. Is there an inconsistency there? Actually, you're correct. But I don't how the tribes style themselves may not always match up exactly with what is on the federal So sometimes there's a short form that's used, you're saying, as a typical matter, as shown by the tribal enrollment certificate, Gila River Indian community. Right. So your position is short form was used, and given that was in Arizona, and the person lives in Arizona and everything else, but the tribal certificate was issued in Arizona, that's a natural inference, or a rational inference. Rationally, especially in the absence of any evidence to the contrary. Was there any evidence given to the jury about the existence of the Tohono O'odham Nation of Arizona, that that even existed? I didn't see that. No, there wasn't. So the jury, sitting there, depending on the evidence in front of it, has no idea that there is a Tohono O'odham Nation of Arizona. There may be one, but the jury's never heard about it. That is correct. So as far as the jury's concerned, there's been no proof that he's a member of the Tohono O'odham Nation of Arizona, because they've never heard of it. Well, again. It might be that he is or was or his father was, but the jury's never heard of that tribe. That is, again, that's correct. But the way I would argue this is if, in fact, Maggie, we're going to fall Maggie, which, again, was decided after this case. Yes, sure, sure. I think this is a jury instruction case as opposed to a sufficiency evidence case. And then you look at it. If the jury had been correctly instructed, there was enough there that they could have found that he was the Tohono O'odham tribe. That he was a member of a Federal Register tribe that they've never heard of. If they had been instructed by the court that the Tohono O'odham Nation of Arizona is a federally recognized tribe, yes. Yeah, but they can't be instructed by the court. There needs to be evidence. I mean, somebody needed to say, and it wouldn't have been very hard to do, that there is such a thing as the Tohono O'odham Nation of Arizona. But a jury instruction isn't going to be evidence. The government's position is whether a tribe is federally recognized is a matter of legislative fact that the court takes judicial notice of, just as the court takes judicial notice that cocaine is a controlled substance. That's the government's position. So that's a matter of law. What? It's a matter of law, that issue. Right. But, okay, so it's a matter of law that we can understand. I'm not taking your position and arguing it out. It's a matter of law that there is such a thing as a registered tribe in Arizona, the Tohono O'odham Nation of Arizona. I've got that. Okay. But the jury's going to be required to find that the father was an enrolled member of that tribe. So that's a factual question. And until they know that that tribe exists, how can they make any factual determination? But if they had been instructed by the court that the Tohono O'odham Nation of Arizona is a federally recognized tribe, the reasonable conclusion from the record in this case, the facts in this case that the jury had was where the certificate says one-quarter Tohono O'odham. The brother testifies he's one-quarter T.O. There's no evidence in the record at all that suggests that there is any Tohono O'odham Nation other than the Tohono O'odham Nation of Arizona. That all leads to only one conclusion, actually. Well, but you see, there's some more facts out there. Again, not in front of the jury, but among the facts that are out there is there are lots of Tohono O'odhams who are not members of any recognized tribe in Arizona. Isn't that right? It would have been a more complicated question if that defense had presented that. If that fact had come out. But you're asking us to say, well, assume that the jury has been instructed that there is such a thing as the Tohono O'odham Nation of Arizona. Okay, I got that. But assume further that they've been instructed that there are an awful lot of Tohono O'odham that are members of no tribe. Well, that's true, too. So why do you say we should assume they've been instructed as to one but not the other? Because I think the other is a factual question. It's not a legal question. Whether there are other Tohono O'odham tribes out there is a factual question. No, no. No, you're mistaking me. Not whether there are other Tohono O'odham tribes out there. No. Whether there are other Tohono O'odham people who are not members of any tribe out there. Again, I would suggest that that is a factual question, too, as opposed to whether something is federally recognized with your statute and treaty. I understand that you can establish easily, all you've got to do is say it to the jury, that there is such a thing as the Tohono O'odham Nation of Arizona. But you didn't say it. Right. I also understand, at least I'm assuming, that you can establish as a fact that there are Tohono O'odham people by blood who are members of no tribe, no federally recognized tribe. You didn't say that either. Is that true? I mean, is there evidence? There's no evidence in the record, of course. Nobody introduced evidence of that. I mean, I don't know that just sitting here. I mean, there are probably people of Tohono O'odham descent that are not members of a tribe. Do you know as a fact? It's not in the record. So this is just extra record. Yes. I readily concede this is extra record. There's a lot of stuff that's not in the record that you're asking us to assume that the jury knew. The one thing I would take dispute with is there are members of the federally recognized Tohono O'odham tribe that do live in Mexico. Again, this is all outside the record, too, obviously. That doesn't mean they're not members of the Tohono O'odham Nation of Arizona. They just are members. They reside in Mexico. So I guess if I'm interpreting your position, what tribes are federally recognized as a matter of law? That this record, in your view, with the certificate, with what the brother testified to, and I think there was also an exclamation of the certificate and a stipulation, that that's sufficient factually here. And if they wanted to show that he wasn't in this particular tribe, that would have been the defense's burden. Right. That they have a burden at some point to, if they, and is this, do you have any indication whether, I've never heard that this defendant is factually innocent. No. There's no indication. I mean, everything demonstrates conclusively that he's an Indian. Well, do we need to, from your perspective, let's, if the court were to, and I'm just saying hypothetically, if the court were to say what I've just said, that would be enough for you to prevail. Do we need to revisit MAGI, MAGI or whatever, MAGI? I don't think you need to. I think it would be wise to. And to sort of flip back to the question I asked opposing counsel, or maybe it's the same question, do you believe there's anything in controlling law that would prevent us from overruling that part of MAGI and Bruce, to the extent necessary? No, I don't think there is. As a matter of fact, I think Antelope would. You heard Amicus counsel argue as to why he, why we should, we're precluded from doing that, citing Antelope. Do you have an answer to that? Actually, I would say Antelope actually supports overruling MAGI, because they're basically saying we're not focusing on a racial test. We're focusing on a political test. And by basically adding additional requirements to the blood prong of the test, you're actually going against what Antelope is saying, which is focus on, focus on the political nature of things. Focus on, in, in, in. Well, to give him his, his view, I thought what he was saying is federal recognition is recognition of a political status. So if you're not looking at Indian as race, which is another way of reading what the statute says, or if you're Indian blood, if you're a descendant of Indians, you're a race of Indians, then you're covered by the statute. And I think what counsel said was, no, you have to focus on federal recognition of a tribe, which is a political process, not a racial process. That's his argument. Yes. And I would say that's taken care of with the second prong of the standard test for whether somebody's an Indian. The tribal and federal recognition is an Indian. And that's where the federal recognition comes in, not into the blood quantum part of the standard test. In other words, what. So where did we go, where did our case law go wrong in your, in your, in your view? I mean, we're in bank, and we can't correct errors in our law if we, if we. Arguably. It's wrong. Arguably there are, there are two areas that the, where the, where this court went wrong. One is to the extent that Cruz says that a certificate of tribal enrollment is not sufficient to establish somebody as an Indian. I think if in fact a certificate, excuse me, a certificate of tribal enrollment that reflects Indian blood is introduced, that's basically conclusive. And you don't need to consider all the other factors that Cruz says. Certainly sufficient is what you would say. Right. But you wouldn't even have to consider the other factors that the Bruce court said should be considered if there is a certificate of tribal enrollment. And then, and Maggie, the specific part where adding that the, in the quantum of blood aspect of the test, that it has to be from a, the quantum of blood has to be from a federal recognized tribe. That makes this court inconsistent with the other circuits. And it's unnecessary. Well, the other circuits haven't addressed that issue head on yet, though. You read their opinions. It's just not discussed. That is correct. But they, all the other circuits go with the standard, what is referred to as the Rogers test, some quantum of blood and federal or tribal recognition as an Indian. Does that mean that you'd be content to go back to the formulation in Bruce? Again, assuming it's clear that a certificate of tribal enrollment is sufficient. But the first point of Bruce does not require tracing back to an ancestor who was in a federally recognized tribe. That's how I read Bruce. That is to say Maggie added that requirement. Correct. Yeah. Thank you. Okay. Thank you, Your Honor. You're out of time. We'll give you two minutes for a bottle and you can divide it or use whatever you want to do with it. I would attempt to divide it. I see two minutes on the clock. I would attempt to divide it. Okay. Go ahead. I would like to make four quick points before addressing Your Honor's argument, question about antelope. First, I'd like to correct that I misspoke. Pima is not a federally recognized tribe. Only the Tohono O'odham Nation of Arizona would suffice for affiliation. Does it matter here, though, because the Gila River Indian community is and the certificate purports to issue from the Gila River Indian community? It matters completely as to the blood requirement, which is prong one of the Bruce tests. And furthermore, the second point, the Tohono O'odham encompasses bands within Arizona that are not federally recognized. That's extra record, correct. That's extra record. But if the jury could infer that they were of Arizona, they could infer that they were of the Hasid who are not federally recognized. There's equal basis or no basis. I agree with. Then he would have been acquitted and we wouldn't be here if they had made that inference, right? They were never given the opportunity to. They decided it basically on a naked racial classification, which is precluded by antelope. I agree with Judge Fletcher's point that we can determine Indian status at the time of the offense. It's a bright line rule. And Maggie creates, or Magi, creates that bright line test. And it shouldn't be overruled by this Court. Antelope prevents the Court from overruling it, actually. That was strictly an equal protection clause. And it didn't consider a question of Indian identity or dispute any or have any discussion of bloodline. Can you tell me precisely, just in as few words as possible, what did they fail to prove? What exact fact did they fail to prove? They failed to prove that the defendant's ancestral blood was from a federally recognized tribe. How would they do that? It's a simple matter of historical record, of fact-finding. They would have to make the case. I mean, specifically, how would they prove that? They would simply have to refer to a record. The best proof is the BIA list. And then allege it at trial. But it is an element. Excuse me. The BIA list of what? Pardon me, Your Honor? The BIA list of what? The BIA list of federally recognized tribes is known to be the best source. I think the point that the Chief was making earlier, I tend to agree with this, that's what they're missing, the factual testimony that connected the T.O. tribes. That's the Bureau of Indian Affairs. Yes.  Yes, Your Honor. Yes, I'm sorry. Bureau of Indian Affairs. And it would have been ‑‑ this is not an onerous burden. It would have been simple. But it is required. I would have to go back and look and see if the father is a member of a recognized tribe. Because the blood is coming from the father. Okay. Was he enrolled in a federally recognized tribe? Sure. Yes or no? Yes. In a case like this, especially with such ‑‑ And if the father is not enrolled in the tribe, even though this guy is enrolled in the tribe, he's not an Indian, is that your position? The question of prong one is whether the Indian's blood descent is from a tribe that had federal recognition. And that's required under antelope, because otherwise, if it's from any Native American or, quote, unquote, Indian tribe, that's a racial classification, unless we limit it to the historical relationships that antelope and Mankari refer to Indians as separate people with their own institutions not ‑‑ supported by a history of government relations with the United States. We have to look at those things and circumscribe the definition of Indian. Thank you. Thank you, Your Honor. The case just argued will stand submitted. You are adjourned.
judges: KOZINSKI, PREGERSON, SILVERMAN, WARDLAW, FLETCHER, GOULD, PAEZ, TALLMAN, CALLAHAN, IKUTA, CHRISTEN